### HIGHTOWER *v.* WALKER *et al.*

The mere fact that a wife got the benefit of goods bought by her husband on his own credit would not, whether he was solvent or insolvent, make her liable in law to the seller for the price of such goods.

February 10, 1896.

Complaint on account. Before Judge Smith. Johnson superior court. March term, 1895.

Plaintiffs sued Mrs. Hightower upon an account for dry goods, groceries, farm supplies and other articles, including various items of cash, all furnished during the year 1893, and amounting to $719.44, less credits aggregating $272.31. She pleaded, not indebted except as to a few articles amounting to about seven dollars; and that she had made no contract with plaintiffs or received any goods from them, either by herself, agent or otherwise, except as before admitted. It appeared for the plaintiffs, that defendant herself bought part of the goods charged in the account, but

all were bought, furnished and used for her benefit in carrying on the farm managed by her husband as her agent; that he did business generally for the last two or three years of his life as agent for her, and claimed no property in his own name, was involved in debt and could not get credit in his own name; that it was generally understood he was her agent, and she never repudiated such agency in his lifetime. She is a half-sister of one of the plaintiffs. The account was made for her benefit; it was made with her husband; she did not do the trading; he said he was her agent; she did not say so. She deposited some rent notes as collateral for his trade; he brought the notes and placed them in the plaintiffs' hands. They sold the goods on the belief that she would pay the account; she did not say she would pay it. One of them (her half-brother) gave the notes back to her husband before the account was paid; did not then know when he would get his pay; supposed she was able to pay the account and would do so. He sent the bills for purchases to her husband, made out against him; but plaintiffs made the account against her. One of the items in the account is a charge of $175 cash advanced for her and by her request, to release the levy of a mortgage *fi. fa.* in favor of Brown against her husband, on certain live stock, and to procure return of certain rent notes which she had transferred to Hicks as collateral for his standing security on the forthcoming bond. A levy under this *fi. fa.* was made by the sheriff in August, 1892, on certain mules, horses, cattle and wagons. Afterwards the sheriff, Howard, was ruled for failure to sell the property, and thereupon a settlement was effected between the attorney for plaintiffs in *fi. fa.*, the sheriff, defendant's husband, and the attorney representing him and defendant. Plaintiffs in the present suit advanced $175 which was used in the settlement; the balance was paid in rent notes transferred by defendant Mrs. Hightower to plaintiffs in *fi. fa.* The *fi. fa.* was transferred to Howard, and by him afterwards transferred to the

present plaintiffs to secure them in the money they advanced. In a note written by defendant to Hicks at the time of the settlement, she requested him to deliver to Howard the rent notes in his possession, and stated that she had agreed on a settlement of the mortgage *fi. fa.*, which relieved Hicks from further liability on the bond. It seems, that after this settlement took place, a sale of the property which had been levied on was made by the sheriff in an adjoining county, at public outcry before the court-house door, and J. E. Hightower bought in the property there for defendant. He testified that it was not a sham sale on the part of defendant or himself; that the property brought $1,000, and was sold under the Brown *fi. fa.*; that plaintiffs were not present at the sale, but one of them (defendant's half-brother) once swore that the stock was sold by his direction. There was further evidence, that in a case of one Pritchard against defendant's husband, a levy was made on certain personalty, and defendant interposed a claim thereto; and that her husband as her agent obtained a continuance on account of her sickness. A witness testified, that defendant's husband bought the land on which they lived, for her, taking a bond for title to her and not to himself. This and another witness thought the crop on the place was hers. Linder, the present sheriff of the county, testified, that defendant did not get the crop; that plaintiffs in the case sent out an attachment, and he went to levy it upon a crop of hers, and she had run five bales of cotton to Lovett and carried one bale to her father's house and got the benefit of the same; and that this cotton was not in the hands of her husband's administrator. From the record of the setting apart of a year's support to defendant in November, 1893, it appeared that the appraisers set apart for that purpose, from her husband's estate, $300 in cotton, corn, etc., including $30.94 cash.

From the testimony of defendant and two other witnesses the following appears: She does not owe the account sued

on, nor any part of it; never made it and never authorized any one to trade with plaintiffs for her, or make any account with them for her in any way. Since her husband's death she made an account with them for eight or ten dollars, which she is ready and willing to pay. Her husband was not her agent. She did not ratify his acts; did not know he was trading on her account with plaintiffs. No statements of accounts were ever brought to her. The only agent she had was J. E. Hightower, her attorney. She did not know of her husband filing any papers for her against Pritchard; did not know whether the case was continued on her account or not. She had sent word by him to J. E. Hightower to attend to some business at different times. The crops made on the place where they lived were her husband's crops; she had no control over them; had nothing to do with the hiring of hands or the management of the farm or the business. The place was not hers; if her husband bought it for her, she knew nothing of it. After his death she got her affairs arranged and left the place; did not claim and has had nothing to do with it. The items in the year's support were the portion of the crop she got; the rest of the crop went into the hands of the administrator; she did not try to conceal the crop or any part of it; has taken nothing from the place but what is her own. The goods, if ever purchased by her husband, did not go to her benefit or for her use on the place. The rent notes were taken by her husband and transferred by him to her. They were for the Tucker place which he rented from Stubbs and subrented to Brantley. When judgment was rendered against the sheriff for failure to sell the property he had levied on under the Brown *fi. fa.*, she agreed to allow these notes to be used in settlement of the matter, and gave the sheriff an order on Hicks for the notes, which he got and used in the settlement. She bought the mules and horses described in the levy, and now has them rented out for $50 a month. Some money also may have been paid to release

the property, but she does not know how much nor who paid it, as her husband and J. E. Hightower attended to the matter for her. The property was bought in for her at the same sale, and she does not know how much above the rent notes was paid for it. It was not generally understood that her husband was her agent; and he was not such in fact.

The jury found for the plaintiffs. Defendant moved for a new trial, on the grounds that the verdict was contrary to law, evidence, and a portion of the court's charge; and because the court erred in his charge to the jury (see the opinion). The motion was overruled, and defendant excepted.

*J. E. Hightower* and *Evans & Evans*, for plaintiff in error. *A. F. Daley*, contra.

LUMPKIN, Justice.

Irrespective of other questions made in the record, there must be another trial of this case, for the reason that the presiding judge charged the jury: "If the husband bought goods of the plaintiff, and the wife got the benefit of them, and the husband was insolvent, then she would be liable for them."

We are quite sure that our brother of the circuit bench has never, since his admission to the bar, believed that the above proposition, just as it stands, is a correct exposition of the law upon the subject with which he was dealing in the present case. Giving this instruction to the jury was manifestly the result of inadvertence on his part. The error thus committed would doubtless have been corrected by the granting of a new trial by the presiding judge, had he not evidently entertained the opinion that the evidence demanded the verdict.

In the argument before this court, counsel for the defendant in error very properly conceded that the charge above quoted was erroneous, but insisted upon an affirmance of the judgment below, on the ground that the error thus

committed was harmless, as the verdict rendered was the only outcome from the evidence legally possible. We have therefore directed our attention particularly to the brief of evidence sent up in the record. After a careful examination and consideration of the same, we are unable to sustain counsel in this conclusion. Without expressing any opinion as to what the verdict ought to be, we feel constrained to order a resubmission of the case to a jury.

*Judgment reversed.*